## MARIA FERNALD vs. CITY OF BOSTON.

A street was laid out in 1804, with an agreement by the owners of land taken therefor, not to claim compensation, and that the street need not be completed until it was deemed expedient to do so. In 1831 the proper authorities voted that the order of 1804, laying out said street, "be carried into execution, so far as the same remains unfinished," and some work was done under that vote. *Held*, that the street was thereby "completed" within the meaning of the original laying out, and was from that time so far an existing way that damages could be recovered under Rev. Sts. *c.* 25, § 6, for lowering the grade thereof in 1850, notwithstanding the agreement of 1804 not to claim compensation for the land.

THIS was a petition for a jury, under Rev. Sts. *c.* 25, § 6, to assess damages, sustained by the petitioner to her estate, in consequence of grading and altering the level of two streets in South Boston, called Fourth street and G street. It was submitted to the court of common pleas, upon an agreed statement of facts, of which the following are the most material:

Fourth street and G street were in that portion of the city, formerly a part of the town of Dorchester, and called Dorchester Neck, or Point. In January 31, 1804, said Point was annexed to the town of Boston, by vote of the inhabitants of said town, and upon the petition of the proprietors of land at said point, upon condition that the proprietors " consent that

the selectmen of the town of Boston shall immediately lay out such streets, public squares, and market places, as they shall judge necessary for the public accommodation, without any compensation for the land so appropriated." By *St.* 1803, *c.* 111, (passed March 6, 1804,) said lands were annexed to Boston, the third section providing that the selectmen of Boston might lay out such streets and lanes through said tract as in their judgment might be for the common benefit; " Provided, only, that no damage or compensation shall be allowed to any proprietor for such streets and lanes as may be laid out within twelve months from the passing of this act; and provided, also, that the town of Boston shall not be obliged to complete the streets laid out by their selectmen pursuant to this act, sooner than they may deem it expedient so to do." In accordance with this act, the selectmen of Boston, on the 27th of February, 1805, laid out several streets through said lands, of which Fourth street and G street were two, approved by all parties, and indicated upon a plan made by Mather Withington, which was made a part of this case.

In April, 1831, David Mosely and nineteen others presented a petition to the city " that the main road, as laid out from the village to the point, (which takes in the old road most of the way,) may be made." It was agreed by the parties that " the village " mentioned in said petition was east of Mount Washington, and between that place and the South Boston point, while the estate of the plaintiff was west of Mount Washington; Fourth street running east and west, and G street crossing it from north to south. This petition being referred to Aldermen Russell and Bent, they reported " that the public convenience requires that the order of the selectmen of Boston, passed February 27, 1805, accepting and laying out Fourth street, be carried into execution, as far as the same remains unfinished, agreeably to the plan of Mather Withington." This report was accepted, and Fourth street, between the village and the point, was then completed, but neither that part of Fourth street, between the village and G street, nor G street itself, was fenced out or worked upon, nor were they in a passable condition, or even used as a street prior to May 6,

1850. The petitioner's house was erected about 1838. In June, 1846, the mayor and aldermen ordered the superintendent of streets to make E street and Fourth street, and said officer proceeded to stake out and grade said streets where they intersect by the land of the petitioner, and removed the earth from time to time to other streets, after which, but before the streets had been finished and opened for public travel, to wit, on the 6th of May, 1850, the mayor and aldermen ordered " that the superintendent of streets be authorized to finish the grading of Fourth street from G street to H street, and also H street from Broadway to Seventh street." In consequence of this order, the streets were smoothed down, and opened for travel, and more earth was removed from Fourth street, and the grading was finished about May 15, 1850, which occasioned the injury complained of ; and on the 26th of September, 1850, the petitioner presented her petition to the mayor and aldermen, for damages thereby occasioned, but they refused to grant the same.

The petitioner contended that Fourth street was completed, within the meaning of the act of March 6, 1804, in April, 1831, upon the adoption of the report upon the petition of Mosely and others, as above stated ; and that the grading of Fourth street, in 1850, was " repairing " it within the meaning of Rev. Sts. *c.* 25, § 6, and so that she was entitled to compensation therefor. The respondents contended that Fourth street never was completed until the grading of 1850, and, therefore, that the petitioner was not entitled to compensation, by force of the act of March 6, 1804, before referred to.

Upon these facts, and others not material to the question, the court of common pleas rendered judgment for the respondents, and the petitioner appealed to this court.

*C. G. Loring & F. W. Dickinson,* for the petitioner.

*P. W. Chandler,* (city-solicitor,) for the respondents. 1. The proceedings of the mayor and aldermen, in 1831, upon the petition of Daniel Mosely and others, cannot affect this case, as that petition referred only to that part of Fourth street between the village and the point, which was the east end of Fourth street, and not near the estate of the petitioner, and

Fourth street and G street near their intersection, and near the petitioner's premises never were passable, or used as streets, prior to May 6, 1850.

2. But the action under the order of May 6, 1850, grading said streets, was only a completion of said streets, within the meaning of the act of March 6, 1804, and the petitioner, by the express words of that act is not entitled to compensation therefor. Rev. Sts. *c.* 25, § 6, applies only to altering streets, after they have been once completed, and, therefore, the petitioner has no claim under it.

SHAW, C. J. This is a petition for a jury to assess damages which the petitioner claims to have sustained in her estate by the alteration of Fourth and G streets, in South Boston. The respondents resist the granting of the petition on the ground that the streets in question had never been completed under the act passed March 6, 1804, so as to render them liable for damages, for acts done with regard to said streets in accordance with an order of the mayor and aldermen, passed May 6, 1850. But the petitioner contends that the proceedings upon the petition of Mosely and others, April 25, 1831, were in fact a completion of said streets, in contemplation of the act of 1804, so that she may now claim damages for subsequent alterations in 1850. Before the revised statutes, no claim could be sustained for damages by repairing streets by digging them down or by raising them. *Callender* v. *Marsh*, 1 Pick. 418. So the law stood at that time. But the Rev. Sts. *c.* 25, § 6, changed the law, and provided a remedy for such injury. The petitioner rests her petition on the revised statutes, and says that the injury, for which damages are claimed, was occasioned by repairing the street and not by laying it out. It becomes necessary, therefore, to consider the nature of the highways in that part of the city. That part of South Boston where the petitioner resides, was formerly a part of Dorchester, and was set off from that town, and annexed to Boston, by an act passed March 6, 1804. There were several other acts passed at the same time having the same object in view, which was to add a large tract of comparatively vacant land to the town, to be converted into build-

ing lots. For the accomplishment of this object it became necessary that a part of the soil should be appropriated for streets and other public uses for the benefit of all. So a provision was introduced into the act that the selectmen of Boston should be authorized to lay out such streets and lanes through the land thus added to the town, as might be for the common benefit of the proprietors, and these provisions were added: viz., that no damage or compensation should be allowed to any proprietor, for such streets and lanes as should be laid out within twelve months, and that the town should not be obliged to complete such streets and lanes sooner than they might deem it expedient so to do. These provisions are of great importance. But why was this large amount of land for streets and other public purposes taken without compensation to the proprietors. A compensation was doubtless obtained in the increased value of the house lots, and the legislature acted on the belief that these provisions were made with the assent of all of the proprietors. It was thought best that this laying out should be made by the town; and, by a special law, the selectmen had authority to lay out streets and lanes without going to the town, so that no vote of confirmation by the town was necessary. But it was thought to be unreasonable that the town should be compelled to put these streets in order until the increased travel, and a due regard to public convenience, as the territory should become more and more settled, should require it. The selectmen were authorized to lay out streets prospectively, but they were not obliged to complete them until such time as they might deem it expedient to do so. This laying out made them streets, but the act exempted the town from the obligation to " work " them. The streets were laid out according to Withington's plan, within the year from the passage of the act, and so by the terms of the act no compensation was to be allowed to the proprietors.

The streets in question were laid out under the act passed March 6, 1804. Have they been completed, so that the work done in 1850, of which the petitioner complains, was a repair, for which damages may be claimed under the revised statutes;

or, was that work a completion of the original laying out, for which the proprietors can claim no compensation? By the word "complete," as used in the act passed in 1804, we do not suppose was intended that condition of the streets in which they are made smooth and finished, but some work by which they are made streets *de facto.* The petitioner says that in 1831, these were made streets *de facto;* and the court are of opinion that the votes then passed, and the work then done under them, did make them streets from that time. The petition of Mosely and others, in 1831, was that the main road as laid out from the village to the point may be made. That petition was referred to aldermen Russell and Bent, who reported that the order of the selectmen of Boston, passed February 27, 1805, accepting and laying out Fourth street, be carried into execution. This report was accepted, and Fourth street is the street in question.

But it is said that the report does not refer to that part of the street in question, but only to a section. There is, however, no such restriction in the report, which includes Fourth street as " far as the same now remains unfinished." We think that the vote of the mayor and aldermen was, that the street laid out in 1805, and which had remained a provisional street up to 1831, should then be made a street *de facto.* It was so made, and some years after the petitioner built her house there. In 1850, the city resolved to improve the street for the accommodation of the increased travel in that part of the city, and in so doing, made the alterations for which the petitioner claims damages. This improvement was an alteration or repair after the street had been " completed " in 1831, and so does not fall within the original restriction of liability in the act of 1804.                    *Petition granted.*